Please proceed. Good morning, and may it please the Court. Yuri Kolesnikov, on behalf of Plaintiff Appellant. With the Court's permission, I would like to reserve three minutes for rebuttal. All right. This is an egregious and yet very simple case of non-disclosure. During the relevant period, Barclays concealed from plaintiffs and other class members numerous material facts pertaining to the workings of its dark pool, the liquidity cross. Among the concealed facts were, one, the true extent of aggressive trading in LX, two, the lack of safeguards in LX, and three, the fact that Barclays manipulated its trading algorithms and dynamic router to favor the LX, as well as that it catered to the very HFTs that it promised to protect its clients from. Disregarding these well-played allegations and the material concessions by Barclays in settlements with the SEC, as a New York attorney general, the District Court dismissed the complaint. The Court should reverse for three reasons. Mr. Kolesnikov, it seems to me that Judge Fischer did a very long and thorough opinion in this case. And if I understood her main points, there were two. One, that there were no allegations by the plaintiff, that's your client, as to the who, what, where, and when of the material misrepresentations. In other words, Great Pacific did not say it was Mr. Jones who read the 2012 February pitch book, and Mr. Jones relied on those statements and did not place trades with other venues and placed trades with Barclays. That was sort of the kernel of Judge Fischer's opinion, following the same sort of opinion from a New York District Court judge. Now tell me, what did she get wrong? Where in your complaint are there allegations under Rule 9 to make out a fraud case, that who, what, where, and when of actual reading of the materials, reliance on the materials, and acting on reliance for the concealed or misrepresented facts? Would you address those issues? Yes, Your Honor, and as we put forward in our papers, Judge Fischer made numerous errors in this regard, and I'll go over them step by step. Number one, even though Rule 9b does impose a heightened pleading standard, it's not an especially onerous standard. This Court just recently, in Freedman v. AARP, held that it's not especially onerous burden imposed at the pleading stage of alleging facts that make it plausible that something was concealed. In this case, the complaint more than sufficiently alleges the who, what, when, how, and why. Who, Barclays, what, manipulated trade algorithms and concealed the true extent? No, no, no. Maybe I'm not making myself clear. Please point out to me the allegations in your complaint where you say that a person, an officer, or a division of Great Pacific Securities actually read the pitch book in February 2012 and other materials and believed and relied on statements in those materials, and then, as a result of that, placed trades with Barclays where, had they known the true facts, they would have placed trade with Deutsche Bank or Merrill Lynch or somebody else. Would you point to that? Yes, Your Honor, but before I do that... No, not before you do that. I know you want to talk about something else, but this judge wants you to talk about this. So would you talk about this? To answer your question, Your Honor, there is no allegation that someone at Great Pacific read those pitch books, nor is it required under the governing law. What's required is to allege that misrepresentations were provided to the client. As we cited in the papers... Suppose the client was asleep or blind or out of the country and didn't read the representations. Would that make a difference? Your Honor, this is not a case where we have... If the client would have read, they would have noticed something in the pitch books that would have made everything kosher, to put it lightly. As the court pointed out in Doyle, where you have a requirement to read is where you have a term of a contract that you're challenging, and you cannot say, well, had I read it, I would have seen that term. There's nothing in the pitch book that was disseminated to the clients that would have upright them of the... But your whole case, as I understand it, is the pitch book said aggressive traders were not... were being policed in the LX dark pool, right? And the pitch book said... didn't say that... that wasn't true. But tell me who... who... anyone... who read that? Your Honor, the complaint expressly alleges had plaintiff known the truth during the class period, he would not have utilized Barclay's algorithms or dynamic router. That's record at page 331 through 32, paragraph 84-85. The complaint includes numerous allegations that... Had he read, but... Where is the allegation that the plaintiff read the misleading materials? Again, maybe I'm repeating myself, and I won't repeat myself anymore and ask you this question unless you give me an answer. Your Honor, there is no allegations of complaint that someone actually read the pitch books. There are allegations that pitch books were received by the client, for example... You do agree with me that a misrepresentation that is received but not read is not an adequate allegation, do you not? I would disagree, Your Honor. Oh, and... Do you have a case that tells me that you have to... There's no necessity to read and rely upon a misrepresentation? Your Honor, again, as we pointed out in our briefs, there is no 9th Circuit case that I'm aware of that actually says that you have to read and review. The district court cases go in both ways, and Judge Fischer relied on one line of those cases, and as we pointed out in our briefs, a second line of the cases, primarily Doyle case, distinguish those cases and say there is no requirement under 9B for a client to allege that they read and reviewed. The lack of ability to allege that someone read and reviewed does not defeat reliance. And even if it could, we would still point out to this court's decision in Friedman, which does say that actual reliance can be presumed whether it's allegations or material misrepresentations. And material misrepresentations is usually a question of fact, unless it's so obvious that something would have been not material. This is not a case where it's so obvious that no jury could rule in favor of the plaintiff. Given the substantial concessions made by Barclays with the government, this is a factual issue of material misrepresentations. Did Barclays concede that Great Pacific read and relied upon its representations when they settled with the New York Attorney General? Among other things, Barclays did concede that it sent materials to its clients. Sent materials. We're at the same loggerhead. Perhaps you wanted to talk about some other aspect of your case. We're using up a lot of your time. Let me ask one follow-up question there. It seems like Judge Fischer laid out a blueprint after your Third Amendment complaint to give you the opportunity to flesh it out with the problems she identified. But you elected not to file a Fourth Amendment complaint. Why? This case has been going on for a while, as you can see from the record. Initially, Barclays tried to get this case moved successfully. Did so to New York. After that, the New York court reminded it back to the Central District of California. This case has been around for a long time. We think, we believe, under the applicable law, we have sufficient allegations of complaint to state a cause of action for concealment. Why do you think, and I know it's been asked in various ways, but again, the most direct answer that you can provide, why do you think you have met the heightened pleading standard here with respect to reliance? And again... Just point to the, or state the best evidence you have on that, the best allegation you have on that. Well, the best allegations, again, Paragraphs 84 through 85 and Paragraph 153 of the complaint specifically say that had Plaintiff known the truth, he would not have utilized Barclays' algorithms. Similarly, Paragraphs 9, 19, 70, 131, 151, 153, all of them allege that Plaintiff was unaware of the wrongful conduct, relied on the marketing materials... Say that again, all of them allege what? Plaintiff was unaware of the wrongful conduct, he relied on the representations, and he would have acted differently. Nothing more is required, especially under Freedman, where especially for the UCL claim, and the false advertising claim, but also for the concealment claim, Plaintiff is entitled to a presumption of reliance. That's the circuit's decision less than a year ago, which came down after the district court decision in this case. And it relies on Chapman, which the district court rejected explicitly. Again, if you look to California case law, including cases like In Red Tobacco and Quickset, what they stand for is... Is there any allegation that if you knew you would not have utilized Barclays, you would have utilized some other venue, or would you just not have traded? There is no requirement to allege that you would have utilized other venues. I guess you and I don't understand each other. I'm not asking whether there's another requirement. I'm asking whether there's an allegation. Is there an allegation that you would have used another venue, or not have traded at all? Yes, there is an allegation. Again, paragraph 84, 85 says... No, no, no, 85 says, had they known the truth, they would not have used. Where is the allegation of what you would have used, or would you not have traded? That allegation is not in the complaint. I didn't think so. Again, we don't believe that's required under applicable law. Again, I see my time is running out. I just want to point out that Barclays conceded in settlements with the government that it did routinely send marketing materials to the clients, which would have included the plaintiff. It sent them specifically the tariff sheet, which is in paragraph 68. It sent them other uniform materials, which is in paragraph 57, 61, 69, 370. And again, plaintiff's clients specifically told plaintiff they did not want to submit trades for execution on venues where a material amount of aggressive and predatory cheese was present. That's paragraph, again, 84, 85. When the truth came out about what was going on in the dark pool, plaintiff did curtail its activity, which is consistent with this allegation that it would not have traded had it known during the relevant period. That's all that's required at this stage to allege a possibility and equal in Twombly that plaintiff relied on the pitch box. Thank you very much. Do you want to keep your two minutes for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honors. I may please the Court. Jeffrey Scott from Sullivan and Cromwell of New York City for Barclays. Now the plaintiff here, Great Pacific Securities, is a highly sophisticated institutional investment firm that trades billions of dollars in securities each year, and it cannot be said that this plaintiff was not given a fulsome opportunity to plead its claims in this case. It was actually, as noted in the paper, given four opportunities to amend the complaint. It actually filed three amended complaints, and that doesn't include, of course, the initial operative complaint. And as Judge Malloy noted, they were also given an opportunity by Judge Fisher after she gave the blueprint to amend the complaint again, and she also offered to allow them to file a motion for discovery if they're able to plead the who, what, when, and where. And despite that numerous opportunities, the plaintiff here who filed this opportunistic litigation hasn't pled an actionable UCL, FAL, or concealment claim against Barclays. Well, let's talk about UCL. Judge Fisher found that there was no UCL claim because the securities laws and regulations that claim to be violated do not provide for a private cause of action. But I don't see that a UCL claim for unlawful conduct requires that a private action is an element of that claim. Your Honor, Judge Fisher dismissed the case for multiple reasons, a UCL claim, right? Do you agree with me that she may have misread the UCL requirement when she said that there had to be an SEC private cause of action? No, Your Honor. I think the Yateng Zhang case, which they relied on, does say there has to be a private right of action. I understood plaintiff's argument to be that the statute in question must expressly bar it, but the cases cited by the defendants in their brief make it clear that it just needs to be a principle of law that precludes the private right of action, right? And there are numerous cases on the federal level that say with respect to Section 17A, regulation ATS, and the market access regulation here, there is no private right of action. She was correct to dismiss it on that ground. She also dismissed it because it's crystal clear that the UCL is a statute which is designed to protect the public at large. There are cases we cite in our papers, the rural communications case, the linear tech case, which says that where you have a business dispute between sophisticated commercial entities, it's not a case that deals with the public at large, and so she dismissed it on that ground as well. The way I read Zhang is that a plaintiff may maintain a UCL claim so long as a law that has allegedly been violated here, 17A, does not expressly bar a private cause of action. It doesn't have to provide a private cause of action. Am I wrong about that? No, but it goes on to say that there also needs to be a principle of law that bars it, and there are numerous federal cases, Your Honor, that say there is no private right of action. It would make no sense to allow the plaintiffs to proceed under this prong just because Section 17A does not say that you can't bring a private right of action. On the federal level, unless the statute makes it clear that you can bring a private action, you're precluded from doing that. This is very clear federal law, and so it would be a very odd result indeed if this Court were allowed to proceed just because it's the federal courts who have interpreted the congressional statute not to allow a private right of action. Well, I can see that maybe a private cause of action under federal law is not provided, but if the principle is violated, why can't California provide a remedy? Because in this case there is no violation of the underlying law that a private citizen can enforce here. It's only the securities. We're talking back and forth with each other. I've caught what you said. I don't quite agree with you, but go ahead. Okay, and I would note with respect this as well, Your Honor, in order for the unlawful prong to be satisfied, you would have to actually have to plead that there was fraud in the case to be a violation of Section 1782. And, of course, the plaintiff here hasn't come remotely close to satisfying the pleading standard with respect to fraud claims. And Your Honors have asked questions with respect to plaintiff. Where are the allegations, the who, what, when, and where, and particularly with respect to reliance? Well, with reliance, if you take a look at paragraph 84 and 85 of the complaint, isn't reliance sufficiently pleaded as the least of those items? No, it is not, Your Honor. Let's take a look at them. What's wrong with them? What's wrong with the allegation? What element is missing? What factual? Your Honor, I don't have paragraph 84 in front of me here. Here, I'll give it to you. Step up here. Okay, yes, Your Honor. You should bring the record to the court, counsel. Thank you. Yes, so this is the allegation with respect to Barclays' ALGOS and its dynamic router. And as Judge Fisher found, right, the allegation of the plaintiff with respect to the ALGOS and the router is that because Barclays allegedly preferenced LX, and LX is its alternative trading system, otherwise known as a dark pool, because it preferenced LX by sending trades there,  were rendered false. But Judge Fisher was correct to note that there was no allegations in the complaint that demonstrated just because Barclays was sending trades to LX that the statements, the specific statements with respect to the ALGOS and the routers were actually false. Some of those statements were Barclays maximizes fill probability. There was nothing about the fact that Barclays was preferencing LX that demonstrated that that statement was false. And so the judge dismissed that claim on falsity grounds. She also dismissed it on reliance grounds. And the reason is, is because what the plaintiff is arguing here, by sending trades to LX, in other words, preferencing LX, Great Pacific Securities was taken advantage of because it interacted with high frequency traders and with aggressive traders. But that goes back to the core of the case, which is under liquidity profiling, which is the service that Barclays offered to its clients. They had the ability to block all trading with aggressive traders, and they had the ability to block all trading with HFTs. But the plaintiff here, as Judge Fisher and Judge Furman found, did not elect and has conceded it never used liquidity profiling. And because it never used liquidity profiling, it couldn't make an allegation of justifiable reliance that it was trying to avoid interacting with HFTs or aggressive traders. In fact, the plaintiff here willingly engaged with, and I think in the book they received, Your Honor is correct, they only received the February 2012 pitch book. In that book, Barclays disclosed that 30%, nearly one-third of the pool was high frequency traders. They also disclosed that 14% of the pool was aggressive trading, and that could be trading by HFTs or institutional firms, different firms can engage in aggressive trading. And what Great Pacific Securities did here is that they elected to trade with aggressive traders and with HFT traders. So your answer to Mr. Kolesnikov is that paragraphs 84 and 85 do not sufficiently allege reliance because there's no allegation of use of the liquidity profile. That's exactly right, and they freely traded with. They did not block trading with aggressive traders or HFT traders. And that's why I think also Judge Fischer found they haven't properly alleged damages because they said that somehow they didn't receive best execution. In other words, not the best price is because HFT firms were trading in Barclays LX, but they elected not to block them. So they can't now complain that they traded with HFT traders or aggressive traders. They also alleged in the complaint, and it's actually on, I think, page three of their brief filed in this court, that there were hordes of other high-frequency traders in all the other venues. So she said that you're not demonstrating, you don't have any particularized allegations that you suffered any damages if you traded in some other venue because you've alleged that these other venues had more HFT traders and more aggressive traders. This case is an opportunistic litigation followed by Great Pacific Securities. It happened to have one pitch book in its possession, the February 2012 pitch book. That pitch book, they claimed, and this is important, and we should just focus on it for one moment. In the first two complaints in this case, they claimed that they were misled because Barclays had removed from that pitch book a bubble that allegedly corresponded with the largest high-frequency trading firm called TradeBot that traded in Barclays LX. That was their allegation, and they said if they knew that, you know, if that bubble was in there, they would have known there was a large high-frequency trader and they wouldn't have traded. Well, we pointed out in our original motion to dismiss before Judge Furman, the book they attached actually had the bubble, and they since have retracted that. But what that demonstrates is what Judge Fisher had a concern with and what Judge Furman had a concern with is, even though they can claim they received one pitch book, they didn't actually plead that they read it, they reviewed it, or they considered it. And as a result of that, they made this silly mistake in their complaint. They claimed something that wasn't true. It was actually in the pitch book, the bubble. So this demonstrates why Judge Fisher and Judge Furman dismissed the case. Their other central allegation, right, and it was their primary allegation, is that they were trading with a higher number of aggressive traders than they thought they were trading with. But Judge Furman and Judge Fisher pointed out that they elected to interact with aggressive trading. They elected to interact with high-frequency trading firms, so they now can't complain that they interacted with those firms. In addition with that, they also said that the plaintiff here hadn't properly pled that Barclay's definition, its use of the phrase aggressive, was actually inaccurate. And that's because the plaintiff here uses multiple definitions of aggressive trading. And if Your Honor would just bear with me for one minute, I will point out just in their appeal brief alone, I will point out the pages for you. On page 9 of their brief, they say aggressive trading is predatory trading, and they don't define what predatory trading means. On page 2 of their brief, I'm sorry, page 27 of their brief, they claim that aggressive trading entails certain very specific trading practices. On page 24 of their brief, they say aggressive trading involves traders that are liquidity takers with high short-term alpha and small order sizes and aggressive liquidity providers. Well, that more or less sounds like what Barclay said they used as a term, how Barclay defined aggressive trading. Yes, Your Honor. Barclay's, with respect to the February 2012 pitch book, had a measurement of aggressive, passive, and neutral. And they did that through two metrics, which was high alpha take and small order sizes. So it was not a subjective term, an opinion that had some objective parameters. With respect to the definition that Barclay's used in that very specific trade book, yes. Now the problem is they try and render that statement false by referring to what Judge Furman called and Judge Fisher called the execution aggressiveness analysis, right? And that was another document, two documents actually. One was created six months after the February 2012 pitch book. The other was created 18 months later, which was October 2013. So for one reason, Furman and Fisher found it was not actionable because it was from a subsequent period. And this is a live trading environment where trading occurs every day. And so if you took a measurement of the pool on any given day, the levels of aggressive, neutral, and passive would change. So they correctly pointed out you can't use this subsequent, in one case year and a half later document, to show that the earlier document was false. They said in addition to that, the execution aggressive analysis doesn't use the same metrics as the pitch book. And I think Judge Furman put it nicely when he said, it might be that the New York Attorney General, and he was referring to the New York Attorney General because the plaintiff just copied the allegations from the New York Attorney General's complaint. It might be that the New York Attorney General and Great Pacific Securities preferred some other measurement of aggressiveness, and that was the one in the execution aggressiveness analysis. But that doesn't render false the statement about 14% aggressive in the February 2012 pitch book because one's an apple and another's an orange. They're really two different metrics. And so he dismissed that claim as well, and so did Judge Fisher. Judge Fisher noted in her opinion, Judge Furman expressly gave them the right to amend to fix that, and they did not fix that. And so here you have an opportunistic plaintiff who relied on the one pitch book it received. And with respect to that pitch book, every one of the statements they couldn't allege were false, and they clearly didn't rely on them. So what has plaintiff done here? Plaintiff then goes to, and he was citing these when he was up before counsel for the plaintiff, a whole number of paragraphs where he says, in the SEC settlement and the New York AG settlement, there was a reference to materials being sent to clients. Now they, you know, there is a rule 11 obligation, so they were careful in their complaint. They didn't say they actually received those documents. They just said they were distributed or they were sent to. And the reason they only say that is because they were just copying what the SEC said. They attached the February 2012 pitch book, but they attached no other pitch book. And Judge Fisher correctly noted that because they didn't receive it, read it, review it, or consider it, it can't be an actionable claim. Now, what do they do? They turn to the Tobacco II line of cases, and they say, well, the Tobacco II line of cases have this presumption of reliance, but we know that in Tobacco II and in Maza and in the recent Hyundai and Kia case from this court, that that line of cases and the presumption of reliance only apply, and I see I'm just about to run out, but I would like to finish this answer, that this line of cases only applies where there's long-term and extensive advertising campaign. And in those cases, the absent class members could be entitled to a presumption of reliance, and that makes sense, right, from a policy reason. And as a policy reason, and use Tobacco II, because that's a great case. There were a decade-long advertising campaign, and thousands and thousands of ads by the cigarette companies. And so all the plaintiffs could come in, and the plaintiffs could say, well, yeah, over the last several years I saw advertising campaigns, and I smoked because of that. But when the defense lawyers asked them, well, what ads did you look at, when did you look at them, and what cigarette was it, they said, well, I really can't remember. So in that context, that makes good sense, that policy. But all of these cases do say that the named plaintiff still has to plead actual reliance. And we would ask this court to look at the Block v. Ebay case, where it says that the presumption of reliance, or inference, some courts call it an inference, is not available where the allegations of the complaint actually demonstrate they didn't rely, right? Because otherwise, if that were the case, and I think that's what plaintiffs are asking this court to do, they're asking them to say in fraud cases where it's difficult to actually plead reliance for the named plaintiff, where we can't do it, where we can't identify the one officer at Great Pacific Securities, that this court should just adopt a presumption of reliance. And if that were to happen, then in fraud cases in the state of California, in this circuit, you wouldn't need to plead reliance anymore. How you actually relied on it would be dispensed of. And that's just simply not the law in California, and it's not the law in the Ninth Circuit. So we'd ask you to affirm the district court's dismissal. Thank you very much. Your Honor, may I approach? Yeah. Thank you very much. Thank you. Mr. Kulashnikov. Your Honor, appellate counsel confuses the two different presumptions that were stated in your tobacco. One presumption was premised on decades-long advertisement campaigns. The second presumption was premised on material misrepresentations, which is exactly what this Court upheld recently in Freedman. And I just want to quote from page 1056. Accordingly, to have alleged reliance on defense misrepresentation or material facts, Freedman only needed to establish it to be plausible that a reasonable man would attach importance to the existence or nonexistence in determining his choice of action, introduction, and question. So you're advocating or asking this Court to just apply a presumption of reliance and not actual reliance? We believe we've adequately alleged reliance, but in the alternative, yes. I think in the Freedman and Chapman, this Court is required to apply the presumption of inference of reliance, especially where you have a campaign by Barclays, which it has admitted to numerous material misrepresentations and just I know I'm almost close to the time if I can speak. Let me ask you a question on the word plausible from Freedman. Is it plausible that Great Pacific, given three opportunities to amend, could not allege factually that one of their officers had read the 2012 pitch book? Is it plausible? Your Honor, this Reliance is sufficiently alleged when we can't name Mr. Jones as having read it? Simple answer, Your Honor. This issue of actually reading came up at the hearing for the first time on the last go-round in Bush v. Smith. And then you were given leave to amend by Judge Fisher, and you chose not to. Right, but previously it was never raised, so we never actually had an opportunity to put it in before that. But all the more reason that you would have taken advantage of the opportunity to proceed with the amended complaint, but instead you chose to stop and appeal. Right, Your Honor, and if I might just briefly conclude and answer your question. This case has been pending on for a long time. We strongly believe that the complaint does allege an actionable claim to proceed forward to discovery, especially given the allegations that were admitted to by Barclays. And on the liquidity profiling, Barclays admitted before the SEC, the liquidity profiling was designed to continuously police the LX. It was not something that the parties had to opt into. That's completely separate from counter-blocking, and that's alleging the complaint. Just briefly, the complaint most adequately states the who, what, when, and why. Therefore, we would ask the Court to reverse and remand. All right, thank you very much. Thank you, Your Honor. We now proceed to the next case, which is Marietta Reyes v. Bank of New York Mellon.
judges: Bea, Murguia, Molloy